IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| NIKKI R. NEEL AND BRANDI CHILDERS RODGERS, ) ) ) Plaintiffs, ) ) v. ) ) CITY OF CAPE GIRARDEAU, MISSOURI, CECIL RAY, JACOB MONTEITH, MATTHEW MCALISTER, GABRIEL YODER, VERNON NORFOLK, ) ) ) ) ) ) ) Defendants. ) | Case No. JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Nikki R. Neel and Brandi Childers Rodgers (collectively "Plaintiffs") for their causes of action state as follows:

1. Plaintiff Nikki R. Neal is a resident of Cape Girardeau County, Missouri, and is the surviving mother of Decedent Nicholas Rodgers ("Decedent" or "Rodgers").

2. Plaintiff Brandi Childers Rodgers is a resident of Cape Girardeau County, Missouri and is the surviving spouse of Decedent.

3. Plaintiffs bring this action individually and on behalf of Decedent Nicholas Rodgers.

4. Defendant City of Cape Girardeau is a charter city located in Cape Girardeau and Scott Counties, Missouri. It owns and operates a police department and jail.

1

5. At all times referenced herein, Defendant City of Cape Girardeau acted under the color of law, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and City of Cape Girardeau pursuant to its authority as a political subdivision of Missouri. It may be served by serving the City Manager Dr. Kenneth Haskin.

6. Defendant Cecil Ray was at all times mentioned herein a duly appointed police officer employed by the City of Cape Girardeau. He acted under the color of law, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and the City of Cape Girardeau Police Department pursuant to his authority as a duly appointed police officer and is sued in his personal capacity.

7. Defendant Jacob Monteith was at all times mentioned herein a duly appointed police officer employed by the City of Cape Girardeau. He acted under the color of law, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and the City of Cape Girardeau Police Department pursuant to his authority as a duly appointed police officer and is sued in his personal capacity.

8. Defendant Matthew McAlister was at all times mentioned herein a duly appointed police officer employed by the City of Cape Girardeau. He acted under the color of law, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and the City of Cape Girardeau Police Department pursuant to his authority as a duly appointed police officer and is sued in his personal capacity.

9. Defendant Gabriel Yoder was at all times mentioned herein was a duly appointed police officer employed by the City of Cape Girardeau. He acted under the

2

color of law, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and the City of Cape Girardeau Police Department pursuant to his authority as a duly appointed police officer and is sued in his personal capacity.

10. Defendant Vernon Norfolk was at all times mentioned herein was a duly appointed jailer employed by the City of Cape Girardeau. He acted under the color of law, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and the City of Cape Girardeau Police Department pursuant to his authority as a duly appointed jailer and is sued in his personal capacity.

11. This action is brought pursuant to 42 U.S.C. § 1983, 1985 & 1988 and the Eighth Amendment to the United States Constitution together with supplemental Missouri state law claims.

12. The Court has jurisdiction over the action pursuant to 42 U.S.C. § 1983, 1985 & 1988, 28 U.S.C. §§1331 and 1343. This Court has jurisdiction over the supplemental state law claims pursuant to 28 U.S.C. §1367(b).

13. The Plaintiffs are natural persons who are entitled to bring this action for money damages. The Defendants reside within the jurisdictional limits of the United States District Court for the Eastern District of Missouri and more specifically within the Southeastern Division for that court.

14. The constitutional violations alleged and the events described herein happened in Cape Girardeau County, Missouri, which is within the geographic jurisdiction encompassed by this Honorable Court.

**15.** The Plaintiffs are the persons aggrieved by the violation of Decedent Nicholas Rodgers' civil rights which violations are made actionable under 42 U.S.C. §§1983 and 1985.

## ALLEGATIONS COMMON TO ALL COUNTS

16. Decedent Nicholas Rodgers had a well established constitutional right to have serious medical needs, including suicide risk, attended to by the Defendants and to not be deprived of life, liberty or the pursuit of happiness without due process of law.

17. At all relevant times herein, Decedent, Nicholas A. Rodgers (hereinafter "Nicholas") was a resident of Missouri.

18. Nicholas was born on July 14, 1995.

19. Nicholas committed suicide by a gunshot wound to the head on May 29, 2020, while in the custody of the Cape Girardeau Police Department at 2530 Maria Louise Lane in Cape Girardeau, Missouri.

20. Nicholas is survived by his Mother, Nikki R. Neel and his surviving spouse, Brandi Childers Rodgers.

21. On Friday, May 29, 2020, at approximately 12:20 a.m., officers of the Cape Girardeau Police Department were called to the Pear Tree Inn at 103 Cape West Parkway in Cape Girardeau, Missouri, in reference to a **robbery** report.

22. Defendant, Cecil Ray of the Cape Girardeau Police Department was first to arrive on the scene and made contact with the victim, Devin M. Nanney (hereinafter "Devin"), a guest at the Pear Tree Inn.

23. Devin told Defendant Ray he left his room at the Pear Tree Inn to go to the parking lot to smoke a cigarette.

24. When Devin entered his car, an unknown male, later identified as Nicholas, entered on the passenger side.

25. Devin did not know Nicholas and did not invite him into his car.

26. Once inside Devin's car, Nicholas punched him in the right eye and allegedly grabbed Devin's pistol from its holster, exited the vehicle and ran toward the south entrance of the said hotel.

27. The allegedly pistol stolen from Devin by Nicholas was described as follows:  Taurus G2S 9MM with magazine and 8 rounds of ammunition, black in color.

28. Shortly after Defendant Ray's arrival at the hotel, Defendants, Jacob Monteith and Matthew McAlister, arrived to help in the investigation.

29. Defendants Monteith and McAlister were able to locate Nicholas in the hotel and recognized Nicholas as a possible suspect in a shooting incident that took place the night before in Cape Girardeau, Missouri.

30. Defendants Monteith and McAlister took Nicholas into custody, and Nicholas denied having any weapons on his person.

31. Defendant McAlister conducted a quick pat down on Nicholas's right side and Defendant Monteith conducted a pat down on his left side.

32. Defendants Monteith and McAlister failed to thoroughly check and search the waistband of Nicholas.

33.     Other officers from the Cape Girardeau Police Department came to the Pear Tree Inn to assist, including Calvin Robinson, Gabriel Yoder, Sgt. Brad Neels, and all assisted in a search of the premises for the stolen Taurus G2S 9mm pistol.

34.     The Taurus pistol was not found by the officers at the Pear Tree Inn.

35.     Defendant Ray took custody of Nicholas from Monteith and McAlister and, had Nicholas empty his pockets and conducted a pat down for weapons on Nicholas.

36.     Defendant Ray did not thoroughly search Nicholas nor did he search the waistband of Nicholas.

37.      The City of Cape Girardeau has *General Orders* dealing with search of persons:

### General Order #07-01 (RED)

**Pat Downs** – A frisk permissible only when there are articulable facts which indicate the person is armed and dangerous.

**Search** – To examine a person for something concealed, as by running one's hands over the clothing, through pockets, etc.

A.     **Guidelines for Pat Down Search:**

When an officer has reasonable suspicion that a crime has, is or is about to be committed, and can articulate reasons of concern for his safety, believing the individual is armed and dangerous, an officer may conduct a limited search of a person's outer clothing wherein the officer runs his or her hands along the outer garments to detect any concealed weapon.

C.     **Guidelines for Search:**

Any person taken into custody by an officer of this department, including persons taken into protective custody, shall, when practical, be searched

before being placed in a police vehicle. Persons transported to police headquarters shall again be searched and their property inventoried.

38. Defendant Ray transported Nicholas to the Cape Girardeau Police Department Headquarters.

39. Defendant Norfolk took custody and control over Nicholas and while inside jail, began processing Nicholas for entry into the jail.

40. Defendant Norfolk asked Nicholas questions on the Intake Form, including questions of whether Nicholas was suicidal. Allegedly, Nicholas answered "no" to the question as to whether he was suicidal.

41. The Intake Form has not been preserved by Defendants.

42. Nicholas made comments while being processed about having brain cancer, that he was positive for COVID and that he needed to detox from methamphetamine use.

43. During the booking process, Defendant Norfolk noted that he thought Nicholas was "acting strange."

44. Nicholas requested a pen and paper so he could write a note, which read as follows:

> 573-275-8393
> Tell my mother
> I love her
> and I'm sorry

45. Defendants Ray and Norfolk planned to have Nicholas "dressed out" in a jail uniform. He was to be placed in an isolation cell because of his COVID positive remarks and held for 24 hours.

7

46. While at the jail, Nicholas was not searched by Defendants Ray or Norfolk. General Order 19-17 states:

**Subject:  Prisoner Security within Police Headquarters**

### I. PURPOSE

The purpose of this General Order is to specify the policies and procedures that will assure the safety and well-being of all individuals within the Cape Girardeau Police Department.

### II. POLICY

It is the responsibility of all Department personnel to exercise the highest degree of caution when dealing with prisoners, no matter what the offense, ensuring officer safety and the well-being of the prisoner.

### IV. PROCEDURE

All prisoners in the custody of Department personnel at Police Headquarters shall be controlled and secured in a manner that will protect the safety of the prisoner and others.  All prisoners shall be considered potentially dangerous.

Upon entry into the jail, prisoners shall immediately be searched and personal property removed.  Property shall be placed in a secure location until the booking process is completed.

   A. **Booking Process**

   1. All prisoners will be subject to the booking process.

   2. All personal property shall be documented.

   3. During the booking process, prisoners shall not be left unattended without being properly restrained by utilizing handcuffs and leg shackles.

   B. **Holding Room**

   1. Prisoners may be placed into the holding rooms while awaiting the booking process, transfer into/from the jail or

      while awaiting mental/physical evaluation and other appropriate situations.

2.     Immediately prior to detainment in the holding room, all incoming prisoners shall be searched.

47. After the booking process, Defendant Norfolk removed the handcuffs on Nicholas and walked him into the medical cell to get dressed in an inmate uniform.

48. As soon as Norfolk and Nicholas entered the medical cell, Nicholas reached into his pants and pulled out the black Taurus G2S 9mm gun, held it to his head and pulled the trigger.

49. The gunshot wound to his head was fatal, instantly killing Nicholas.

COUNT I – DENIAL OF MEDICAL CARE BY INDIVIDUAL DEFENDANTS

50. Plaintiff incorporates by reference the allegations contained in paragraphs one (1) through forty-nine (49) as if fully set forth herein.

51. Decedent Nicholas Rodgers had a serious need for medical treatment to address his medical conditions of suicidal thoughts, COVID-19, alleged brain cancer, and intoxication due to methamphetamine.

52. Defendants Cecil Ray, Jacob Monteith, Matthew McAlister, Gabriel Yoder, and Vernon Norfolk (collectively "Individual Defendants") were aware of this serious need for medical treatment as Decedent Nicholas Rodgers reported his conditions to Individual Defendants and wrote a suicide note to his mother which was obtained by Individual Defendants.

53. Individual Defendants, despite knowledge of Decedent Nicholas Rodgers medical condition and suicidal state, failed to obtain medical treatment or a medical screening of Decedent Nicholas Rodgers within a reasonable time.

54. Individual Defendants, despite knowledge of Decedent Nicholas Rodgers suicidal state, failed to search Decedent Nicholas Rodgers for weapons or other items that he could use to harm himself.

55. Individual Defendants' failures, as described herein, showed deliberate indifference to Decedent Nicholas Rodgers' serious need for medical attention.

56. As a direct and proximate result of Individual Defendants' failure to provide medical treatment to Decedent Nicholas Rodgers in a reasonable time, Decedent Nicholas Rodgers died as a result of suicide.

57. As a direct and proximate result of Individual Defendants' failure to provide medical treatment to Decedent Nicholas Rodgers in a reasonable time, Decedent Nicholas Rodgers suffered severe pain and mental anguish prior to his death.

58. As a direct and proximate result of Individual Defendants' failure to provide medical treatment to Decedent Nicholas Rodgers in a reasonable time, Plaintiffs were caused to suffer pecuniary losses caused by the death of Decedent Nicholas Rodgers including lost wages, financial support, and funeral expenses.

59. As a direct and proximate result of Individual Defendants' failure to provide medical treatment to Decedent Nicholas Rodgers in a reasonable time, Plaintiffs were caused to suffer the loss of Decedent Nicholas Rodgers' services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support.

60. If the Plaintiffs prevail and are awarded actual or nominal damages, Plaintiffs are entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor, and against Individual Defendants, on Count I of Plaintiff's Complaint, award them their costs of suit, reasonable attorneys' fees, and any further relief this Court deems just and appropriate.

### COUNT II – DELIBERATE INDIFFERENCE TO A SUBSTANTIAL RISK OF SUICIDE BY INDIVIDUAL DEFENDANTS

61. Plaintiff incorporates by reference the allegations contained in paragraphs one (1) through forty-nine (49) as if fully set forth herein.

62. Decedent Nicholas Rodgers had a substantial risk of suicide.

63. Defendants Cecil Ray, Jacob Monteith, Matthew McAlister, Gabriel Yoder, and Vernon Norfolk (collectively "Individual Defendants") were aware, or should have been aware, of Decedent Nicholas Rodgers' substantial risk of suicide as Decedent Nicholas Rodgers was not appropriately screened for suicide risk, prepared a suicide note, and gave it to Individual Defendants.

64. Despite this knowledge, Individual Defendants failed to conduct a proper suicide prevention screening on Decedent Nicholas Rodgers.

65. Despite this knowledge, and in direct violation of the City of Cape Girardeau General Orders and Policies and Procedures, Individual Defendants failed to conduct a proper search of Decedent Nicholas Rodgers for weapons or other

contraband and allowed him to retain a Taurus G2S 9mm pistol on his person while in custody.

66. Individual Defendants acted with deliberate indifference in failing to respond to Decedent Nicholas Rodgers' substantial risk of suicide when they failed to properly screen him for suicide, failed to follow suicide watch procedures, and failed to remove from his person the Taurus G2S 9mm pistol.

67. As a direct and proximate result of Individual Defendants' failures to respond to Decedent Nicholas Rodgers' substantial risk of suicide, to follow policies and procedures relating to suicide screening and prevention, and to follow policies and procedures relating to removing weapons and firearms from detained individuals, Decedent Nicholas Rodgers' committed suicide.

68. As a direct and proximate result of Individual Defendants' failures to respond to Decedent Nicholas Rodgers' substantial risk of suicide, to follow policies and procedures relating to suicide screening and prevention, and to follow policies and procedures relating to removing weapons and firearms from detained individuals, Decedent Nicholas Rodgers suffered severe pain and mental anguish prior to his death.

69. As a direct and proximate result of Individual Defendants' failures to respond to Decedent Nicholas Rodgers' substantial risk of suicide, to follow policies and procedures relating to suicide screening and prevention, and to follow policies and procedures relating to removing weapons and firearms from detained individuals, Plaintiffs were caused to suffer pecuniary losses caused by the death of Decedent Nicholas Rodgers including lost wages, financial support, and funeral expenses.

70. As a direct and proximate result of Individual Defendants' failures to respond to Decedent Nicholas Rodgers' substantial risk of suicide, to follow policies and procedures relating to suicide screening and prevention, and to follow policies and procedures relating to removing weapons and firearms from detained individuals, Plaintiffs were caused to suffer the loss of Decedent Nicholas Rodgers' services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support.

71. If the Plaintiffs prevail and are awarded actual or nominal damages, Plaintiffs are entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor, and against Individual Defendants, on Count II of Plaintiff's Complaint, award them their costs of suit, reasonable attorneys' fees, and any further relief this Court deems just and appropriate.

COUNT III – PATTERN OF UNCONSTITUTIONAL CONDUCT BY THE CITY OF CAPE GIRARDEAU

72. Plaintiff incorporates by reference the allegations contained in paragraphs one (1) through forty-nine (49) as if fully set forth herein.

73. Defendant City of Cape Girardeau had a duty to promulgate policies and procedures, provide adequate training to its employees, and provide adequate numbers of employees to prevent the violation of inmates' and detainees' well established constitutional rights.

74. Defendant City of Cape Girardeau failed to put into place sufficient policies, procedures, and safety rules to provide adequate medical assessments to inmates, including adequate screening for suicide risks so as to prevent the violation of inmates' constitutional rights.

75. Defendant City of Cape Girardeau failed to provide adequate training to its employees to insure that inmates received adequate medical assessments, including adequate screening for suicide risks so as to prevent the violation of inmates' constitutional rights.

76. Defendant City of Cape Girardeau failed to provide adequate staffing to insure that inmates received adequate medical assessments, including adequate screening for suicide risks so as to prevent the violation of inmates' constitutional rights.

77. Defendant City of Cape Girardeau failed to put into place sufficient policies, procedures, and safety rules to insure that all inmates were properly searched for weapons and contraband before being placed in custody so as to prevent the violation of inmates' constitutional rights.

78. Defendant City of Cape Girardeau failed to provide adequate training to its employees to insure that all inmates were properly searched for weapons and contraband before being placed in custody so as to prevent the violation of inmates' constitutional rights.

79. Defendant City of Cape Girardeau failed to provide adequate staffing to insure that all inmates were properly searched for weapons and contraband before being placed in custody so as to prevent the violation of inmates' constitutional rights.

80. As a direct and proximate result of the failures of the City of Cape Girardeau to promulgate sufficient policies, procedures, and safety rules, provide adequate training to its employees, and to provide adequate staffing as described herein, Defendant City of Cape Girardeau created a pattern of unconstitutional conduct resulting in the violation of inmates' constitutional rights to adequate medical treatment including suicide risk screening and prevention.

81. Defendant City of Cape Girardeau was aware of the pattern of unconstitutional conduct described herein and was deliberately indifferent to or tacitly authorized the unconstitutional conduct.

82. As a direct and proximate result of the failures of the City of Cape Girardeau to promulgate sufficient policies, procedures, and safety rules, provide adequate training to its employees, and to provide adequate staffing as described herein, Defendant City of Cape Girardeau was deliberately indifferent to the violation of Decedent Nicholas Rodgers' well-established constitutional right to have his substantial risk of suicide addressed and to prevent his suicide.

83. As a direct and proximate result of the failures of the City of Cape Girardeau to promulgate sufficient policies, procedures, and safety rules, provide adequate training to its employees, and to provide adequate staffing as described herein, Decedent Nicholas Rodgers' committed suicide.

84. As a direct and proximate result of the failures of the City of Cape Girardeau to promulgate sufficient policies, procedures, and safety rules, provide adequate training to its employees, and to provide adequate staffing as described herein, Decedent Nicholas Rodgers suffered severe pain and mental anguish prior to his death.

85. As a direct and proximate result of the failures of the City of Cape Girardeau to promulgate sufficient policies, procedures, and safety rules, provide adequate training to its employees, and to provide adequate staffing as described herein, Plaintiffs were caused to suffer pecuniary losses caused by the death of Decedent Nicholas Rodgers including lost wages, financial support, and funeral expenses.

86. As a direct and proximate result of the failures of the City of Cape Girardeau to promulgate sufficient policies, procedures, and safety rules, provide adequate training to its employees, and to provide adequate staffing as described herein, Plaintiffs were caused to suffer the loss of Decedent Nicholas Rodgers' services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support.

87. If the Plaintiffs prevail and are awarded actual or nominal damages, Plaintiffs are entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor, and against Defendant City of Cape Girardeau on Count III of Plaintiff's

Complaint, award them their costs of suit, reasonable attorneys' fees, and any further relief this Court deems just and appropriate.

COUNT IV – WRONGFUL DEATH PURSUANT TO SECTION 537.080, RSMo. AS TO INDIVIDUAL DEFENDANTS

88.     Plaintiff incorporates by reference the allegations contained in paragraphs one (1) through forty-nine (49) as if fully set forth herein.

89.     Plaintiffs are members of the class of individuals identified by Section 537.080, RSMo., permitted to bring a claim for the wrongful death of Nicholas Rodgers.

90.     Defendants Cecil Ray, Jacob Monteith, Matthew McAlister, Gabriel Yoder, and Vernon Norfolk (collectively "Individual Defendants") owed a duty to provide adequate medical care, including suicide screening and prevention, to Decedent Nicholas Rodgers.  Individual Defendants further owed a duty to remove all weapons and/or other contraband from Decedent Nicholas Rodgers in order to protect him from himself.

91.     Defendant City of Cape Girardeau promulgated policies, procedures, and safety rules in order to meet its duties, including requiring that inmates be given medical screenings, adequate medical care to meet their medical needs, provided suicide screenings and prevention services, and that inmates be searched for weapons and contraband prior to being taken into custody and/or placed in a jail cell.

92.     The policies, procedures, and safety rules described herein were mandatory and Individual Defendants had no discretion to deviate from the requirements of those policies, procedures, and safety rules.

93. The policies, procedures, and safety rules described herein were promulgated to protect identifiable, individual inmates with medical needs, including suicide risk, similar to Decedent Nicholas Rodgers.  The policies, procedures, and safety rules described herein were not promulgated to protect the public or employees of the City of Cape Girardeau at large.

94. Individual Defendants failed to adhere to the policies, procedures and safety rules described herein.

95. Individual Defendants' failure to adhere to the policies, procedures, and safety rules described herein was ministerial and not discretionary.

96. Individual Defendants breached the duties they owed to Decedent Nicholas Rodgers to provide him adequate medical care, including suicide screening and prevention, to Decedent Nicholas Rodgers, and to remove all weapons and/or other contraband from Decedent Nicholas Rodgers in order to protect him from himself.

97. Individual Defendants' breach of the duties described herein further constituted a breach of the policies, procedures, and safety rules promulgated by the City of Cape Girardeau.

98. As a direct and proximate result of said breaches, Decedent Nicholas Rodgers committed suicide.

99. As a direct and proximate result of said breaches, Decedent Nicholas Rodgers suffered severe pain and mental anguish prior to his death.

100. As a direct and proximate result of said breaches, Plaintiffs were caused to suffer pecuniary losses caused by the death of Decedent Nicholas Rodgers including lost wages, financial support, and funeral expenses.

101. As a direct and proximate result of said breaches, Plaintiffs were caused to suffer the loss of Decedent Nicholas Rodgers' services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor, and against Individual Defendants, on Count IV of Plaintiff's Complaint, award them their costs of suit, reasonable attorneys' fees, and any further relief this Court deems just and appropriate.

Respectfully Submitted,

*/s/ Stephen E. Walsh*
Stephen E. Walsh #24992
WALSH LAW FIRM, LLC
635 N. Main Street
Poplar Bluff, MO  63901
TEL: 573 712 2909
FAX 573 712 2912
swalsh@walsh-firm.com

BLANTON, NICKELL, COLLINS,
DOUGLAS & HANSCHEN, L.L.C.
219 S. Kingshighway
Post Office Box 805
Sikeston, MO 63801
Phone: (573)471-1000
Fax:(573)471-1012
shanschen@blantonlaw.com

*/s/ Shaun D. Hanschen*
Shaun D. Hanschen #56821